UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA

-against-

DEVONTE DELBAS,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/21/2025__

21 Cr. 106 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Devonte Delbas, stands accused of violating the conditions of his supervised release by committing nine state crimes in connection with his alleged participation in a convenience store robbery. For the reasons stated below, the Court finds, by a preponderance of the evidence, that Delbas committed all but three of the charged violations.

## BACKGROUND

After pleading guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), in July 2022, Delbas was sentenced to ten months' imprisonment followed by three years of supervised release, ECF No. 48 at 1–3. His term of supervised release began in January 2023. Violation Report at 2.[1]

Delbas is charged with various violations of his conditions of release. Nine specifications concern Delbas' alleged participation as an accomplice in a convenience store robbery on July 19, 2023. *Id.* at 4–6. Specifications 1, 2, and 3 state that Delbas committed the crimes of robbery in the first, second, and third degrees, respectively, in violation of New York Penal Law §§ 160.15(4), 160.10(1), and 160.05. *Id.* at 4–5. Specifications 4 and 7 state that Delbas committed the crimes of grand larceny in the fourth degree and petit larceny, respectively, in

---

[1] Citations to the Violation Report are to the third amended violation report dated May 29, 2024.

violation of New York Penal Law §§ 155.30 and 155.25. *Id.* at 5. Specifications 5 and 8 state that Delbas committed the crimes of criminal possession of stolen property in the fourth and fifth degrees, respectively, in violation of New York Penal Law §§ 165.45(1) and 165.40. *Id.* Finally, Specifications 6 and 9 state that Delbas committed the crimes of menacing in the second and third degrees, respectively, in violation of New York Penal Law §§ 120.14(1) and 120.15. *Id.*

The Court held an evidentiary hearing on all the specifications on January 13 and 16, 2025. The Government called two New York Police Department officers: Ivan Lovera, who responded to the convenience store where the incident occurred, and Orlando Roa, who interrogated Delbas following his subsequent arrest. "Victim 1,"[2] a convenience store worker present during the robbery, also testified. Except where indicated otherwise, the Court credits their testimony. In addition, the prosecution presented silent security camera footage of the incident, which showed the robbery's primary perpetrator ("CC-1") handing Delbas drawers full of merchandise from behind the store counter and Delbas exiting with the drawers, Gov't Ex. 101, a video recording of Delbas' police interrogation, Gov't Ex. 201, a police report describing the incident, Gov't Ex. 305, and a stolen property worksheet filled out by the store's manager, who was not present during the robbery and did not testify, Gov't Ex. 306.

To prevail on any specification, the Government must prove each essential element of the charge by a preponderance of the evidence. *United States v. Peguero*, 34 F.4th 143, 152 (2d Cir. 2022). "The preponderance standard requires proof that the defendant's violation of supervision was more likely than not." *Id.* (quoting *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir.

---

[2] At the hearing, the Court denied the Government's motion to call this witness under a pseudonym, but it directed the court reporter to redact the witness' name from the public transcript. Hearing Tr. 2 at 2:12–3:21, ECF No. 85.

2016)). Furthermore, because most of the charges here have been brought under a theory of accomplice or accessorial liability, the Government must also prove by a preponderance of the evidence that Delbas acted with the requisite accessorial intent, here, that he "intentionally aid[ed]" his accomplice "with the mental culpability required for the commission" of the charged offense. N.Y. Penal Law § 20.00.

Delbas concedes that he violated Specifications 7 and 8, which charge him with petit larceny and criminal possession of stolen property in the fifth degree, but contests the remainder of the specifications. Def. Mem. at 1, ECF No. 87.

### FINDINGS OF FACT

I.   Robbery

To prove Specification 1, first-degree robbery, the Government must demonstrate that (1) Delbas personally, or by acting in concert with another person, forcibly stole property from another; and (2) in the course of the commission of the crime, Delbas or another participant in the crime displayed what appeared to be a firearm. *See* N.Y. Penal Law § 160.15(4). Although this firearm display element "focuses on the fearful impression made on the victim, it is not primarily subjective," and the Government must show that the person exhibiting the weapon "consciously displayed something that could reasonably be perceived as a firearm," though "the object displayed need not closely resemble a firearm or bear a distinctive shape." *People v. Lopez*, 535 N.E.2d 1328, 1331 (N.Y. 1989). This element may be satisfied by the display of an item inside a coat or pocket, or even by "a hand consciously concealed in clothing," as long as "under all the circumstances[,] the defendant's conduct could reasonably lead the victim to believe that a gun is being used during the robbery." *Id.*; *see also People v. Smith*, 75 N.E.3d 84, 87 (N.Y. 2017).

3

The Court finds that the Government has not proven Specification 1 by a preponderance of the evidence because it has failed to prove that CC-1 displayed what appeared to be a firearm. The Government concedes that CC-1 never took a weapon out of his pocket and that the convenience store employees said they never saw a gun.  Gov't Mem. at 16 n.5, ECF No. 88.  At the evidentiary hearing, Victim 1 testified that CC-1 made no threats and said nothing about a gun.  Hearing Tr. 2 at 22:10–15, ECF No. 85.  And, although the Government argues that the surveillance video footage shows that CC-1 "reached in the direction of his waist," after reviewing the footage, the Court disagrees.  Gov't Mem. at 16.

Granted, Victim 1 also testified at the hearing that CC-1 had his hand in his pocket with what Victim 1 "assume[d] . . . was a weapon," Hearing Tr. 2 at 7:8–9, 10:2–3, 15:12–16, 16:22–25, and in his police report, Officer Lovera wrote that the other, non-testifying convenience store employee ("Victim 2") told him that CC-1 claimed to have a gun.[3]  Hearing Tr. 1 at 49:2–4, ECF No. 83.  Nevertheless, § 160.15(4) cannot be read so broadly as to include a mere statement by a perpetrator that he is armed with a gun, *Lopez*, 535 N.E.2d at 1331, and given Victim 1's conflicting testimony, the Court cannot conclude that it is more likely that not that CC-1 "displayed" a firearm.

Conversely, the Court finds that Delbas committed robbery in the second degree and the lesser included offense of robbery in the third degree.  *See People v. Rumrill*, 836 N.Y.S.2d 333, 336 (App. Div. 2007).  To prove Specification 2, robbery in the second degree, the Government must show that (1) Delbas personally, or by acting in concert with another person, forcibly stole

---

[3] In an oral order, the Court explained why it would admit certain hearsay statements made by Victim 2 and the convenience store's manager.  Hearing Tr. 1 at 14:22–19:12, ECF No. 83.

property from another; and (2) Delbas was aided in doing so by another person actually present. N.Y. Penal Law § 160.10(1).

The Government has proven these elements by a preponderance of the evidence. Although it is unclear whether CC-1 displayed a weapon to the convenience store employees, the surveillance video footage shows him aggressively speaking to the employees, pushing them, grabbing a phone from Victim 1's hand, and pulling out drawers of merchandise. Gov't Ex. 101. At the hearing, Victim 1 confirmed that CC-1 "scream[ed]" at the store employees, "forc[ed] his way . . . behind the counter," "snatched" Victim 1's phone from his hand, and carried away several drawers filled with merchandise. Hearing Tr. 2 at 6:17–23, 7:7–13. This account is further supported by Officer Lovera's police report, which describes Victim 2's similar account. *See* Gov't Ex. 304. It is also clear that both CC-1 and Delbas were actually present during the robbery. The surveillance video footage reflects that, although Delbas was not present when CC-1 initially pushed himself behind the counter, Delbas was there while CC-1 argued with the store employees, took Victim 1's phone, and stole the drawers of merchandise. Gov't Ex. 101.

Delbas argues that he lacked the requisite intent to be held liable for robbery. Def. Mem. at 7–9. To sustain a conviction for robbery, the Government must first establish that a defendant had "larcenous intent," which is the "intent to deprive another of property or to appropriate the same to himself or to a third person." *People v. Terranova*, 48 N.Y.S.3d 430, 431 (App. Div. 2017) (quoting *People v. Medina*, 960 N.E.2d 377, 380 (N.Y. 2011)). The Government must next prove that Delbas intended to obtain the property by force, "either by using his own force or taking advantage of [his accomplice]'s use of force." *People v. Telesford*, 49 N.Y.S.3d 414, 423 (App. Div. 2017). Intent can "be inferred from the defendant's conduct and the surrounding circumstances." *People v. Bracey*, 360 N.E.2d 1094, 1098 (N.Y. 1977) (citation omitted).

Delbas concedes that he committed petit larceny, Def. Mem. at 1, so he has admitted to larcenous intent, *see* N.Y. Penal Law § 155.05(1). His argument therefore revolves around whether he acted with the intent that force be used to obtain the property. *See* Def. Mem. at 8–9. Delbas points out that he did not enter the convenience store with CC-1 and that his calm, unthreatening demeanor and lack of a hat or hood demonstrate that he did not intend to forcibly steal property. *Id.* The Court agrees that the surveillance footage suggests that Delbas may not have coordinated with CC-1 prior to the incident, and that Delbas may not have entered the store with the intent that force be used. However, premeditation is not an element of the charged crimes, and the video footage shows that Delbas "continued to participate [in the robbery] even after his companion's intentions became clear." *People v. Allah*, 71 N.Y.2d 830, 832 (1988); *see* Gov't Ex. 101. Accordingly, the Court finds, by a preponderance of the evidence, that Delbas committed robbery in the second and third degrees.

II. <u>Larceny</u>

Specifications 4 and 7 state that Delbas committed the crimes of grand larceny in the fourth degree and petit larceny. Violation Report at 5. To prove grand larceny, the Government must show that (1) Delbas personally, or by acting in concert with another person, wrongfully took, obtained, or withheld property from its owner; (2) he did so with the intent to deprive another of the property or to appropriate the property to himself; and (3) the value of the property exceeded $1,000. N.Y. Penal Law § 155.30(1). Delbas admits to the first two elements, Def. Mem. at 10–11, so the only question is whether the Government has proven by a preponderance of the evidence that the stolen property was worth over $1,000.

The stolen property report, which the Court allowed into evidence for good cause shown, *see* Hearing Tr. 1 at 17:10–19:12, 29:11–30:5, states that the stolen drawers and their contents

were worth $2,300. Gov't Ex. 305. Delbas contends that the Court should attribute little weight to this hearsay statement, Def. Mem. at 11, but the statement is corroborated by Victim 1's live testimony, Hearing Tr. 2 at 17:22–24 (Victim 1's testimony that the merchandise in the stolen drawers was worth over $1,000). Together, this evidence establishes a reasonable basis to conclude that the drawers and their contents were worth over $1,000.[4] The Court concludes, therefore, that Delbas committed grand larceny in the fourth degree. *See People v. Furman*, 59 N.Y.S.3d 165, 169–70 (App. Div. 2017).

### III.    Criminal Possession of Stolen Property

Specifications 5 and 8 state that Delbas committed the crimes of criminal possession of stolen property in the fourth and fifth degrees. The former crime requires the Government to prove that (1) Delbas knowingly possessed stolen property; (2) he did so with the intent to benefit himself or a person other than the owner of the property or to impede the property's recovery by its owner; and (3) the value of the property exceeded $1,000. N.Y. Penal Law § 165.45(1). The latter crime requires that the Government prove only the first two elements of the former. *Id.* § 165.40. Because Delbas admits to criminal possession in the fifth degree, Def. Mem. at 1, and because the value of the stolen property was, as just discussed, greater than $1,000, the Court finds that Delbas also committed criminal possession of property in the fourth degree.

---

[4] The $1,000 threshold is also likely met through the theft of Victim 1's phone, which Victim 1 testified was purchased for $1,200. Hearing Tr. 2 at 17:4–10. Delbas argues that he played no role in taking Victim 1's phone and therefore cannot be deemed an accomplice to that offense. Def Mem. at 11. But the theft of the phone, which Delbas witnessed, was part of the larger crime to which he was an accomplice. Just as the Court cannot absolve Delbas of responsibility for the merchandise in the drawer that CC-1 carried out of the store, it cannot absolve Delbas for CC-1's forcible taking of Victim 1's phone.

IV.   Menacing

Finally, Specifications 6 and 9 state that Delbas committed the crimes of menacing in the second and third degrees. To prove menacing in the second degree, the Government must demonstrate that (1) Delbas personally, or by acting in concert with another person, placed or attempted to place another in reasonable fear of physical injury, serious physical injury, or death by displaying a deadly weapon, dangerous instrument, or what appears to be a firearm; and (2) he did so intentionally. N.Y. Penal Law § 120.14(1). To prove menacing in the third degree, the Government must show that (1) Delbas personally, or by acting in concert with another person, by physical menace, intentionally placed or attempted to place another person in fear of death, imminent serious physical injury, or physical injury; and (2) he did so intentionally. *Id.* § 120.15.

As explained earlier, the Government has not shown by a preponderance of the evidence that Delbas' accomplice, CC-1, displayed a firearm, so the Court finds that the Government has not met its burden as to menacing in the second degree. Furthermore, the Court agrees with Delbas that the Government has failed to prove that he intended to place the convenience store employees in fear of physical injury, as required for both menacing charges. For the reasons stated above, it is unclear whether CC-1 had a firearm or displayed what appeared to be a firearm, and even crediting Victim 2's hearsay statement that CC-1 claimed to have a gun, Hearing Tr. 1 at 49:2–4, there is no evidence that CC-1 made that claim in Delbas' presence. Additionally, as Delbas notes, his casual affect during the robbery supports the inference that he did not intend to place the store employees in fear of physical injury. *See Bracey*, 360 N.E.2d at 1098. Accordingly, the Court declines to find Delbas guilty of either menacing offense.

## CONCLUSION

For the foregoing reasons, the Court finds that Delbas violated his conditions of supervised release with respect to Specifications 2, 3, 4, 5, 7, and 8—the last two of which Delbas concedes—but not with respect to Specifications 1, 6, and 9. Sentencing is scheduled for **March 17, 2025**, at **3:00 p.m.** By **March 3, 2025**, Delbas shall file his sentencing submission. By **March 10, 2025**, the Government shall file its submission.

SO ORDERED.

Dated: February 21, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge